UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Richard Alonzo Woods (01) and Damen Tyrell Lee Acon (02),<br><br>Defendants. | Case No. 18-cr-0153 (WMW/HB)<br><br>**REPORT AND RECOMMENDATION** |

Surya Saxena, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, Minnesota 55415, for United States of America

Caroline Durham, Durham Law Office, 3201 Hennepin Avenue South, Minneapolis, Minnesota 55408, for Richard Alonzo Woods

Shannon R. Elkins, Office of the Federal Defender, 300 South Fourth Street, Suite 107, Minneapolis, Minnesota 55415, for Damen Tyrell Lee Acon

HILDY BOWBEER, United States Magistrate Judge

This case is before the undersigned United States Magistrate Judge on Defendant Richard Alonzo Woods' Motion for Suppression of an Unlawful Search [Doc. No. 28], Defendant Richard Alonzo Woods' Motion for Suppression of Statements [Doc. No. 31], Defendant Damen Tyrell Lee Acon's Pretrial Motion to Suppress Search and Seizure [Doc. No. 37], and Defendant Damen Tyrell Lee Acon's Pretrial Motion to Suppress Statements, Admissions, and Answers [Doc. No. 38]. The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

I.      **Procedural Background**

On June 20, 2018, Richard Alonzo Woods and Damen Tyrell Lee Acon were each charged with one count of Felon in Possession of Firearm, in violation of 18 U.S.C. § 924(d)(1).  (Indictment [Doc. No. 1].)  Woods filed pretrial motions on July 23, 2018, and Acon filed pretrial motions on August 2, 2018.

The Court held a hearing on the motions on August 28, 2018.   Minneapolis Police Lieutenant John Biederman and Minneapolis Police Officer Jason Beresford Wolff testified for the Government, and the Government introduced eleven exhibits into evidence.  Woods and Acon filed their post-hearing memoranda on October 4, 2018, and the Government filed its post-hearing memorandum on October 25, 2018.  The Court took the motions under advisement on October 25.

II.     **Woods' Motion to Suppress Evidence**

In Woods' originally-filed motion to suppress evidence, he sought to suppress all evidence seized from his vehicle pursuant to a warrantless search, as well as evidence seized from his residence and cell phones pursuant to a warrant.  In the Government's initial written response to the motion, the Government argued the warrantless search of the vehicle was justified as incident to arrest.  In Woods' post-hearing memorandum, he argued that the warrantless vehicle search fell outside the automobile exception to the warrant requirement, but he did not address the incident-to-arrest exception.  The Government argued in its post-hearing memorandum that both exceptions apply.

As to the search of his residence and cell phones, Woods contends that the search warrant lacked probable cause, but he does not identify a particular deficiency.  The

Government disagrees.

### A. Evidence Seized During the Warrantless Search of Woods' Vehicle

Minneapolis Police Lieutenant John Biederman testified about the stop of a white Chevrolet Tahoe with white wheel rims on May 18, 2018. At about 4:00 p.m. that day, an individual called 911 and reported that gunshots were fired near 8th Avenue and Morgan Avenue North in Minneapolis. (Hr'g Tr. at 19.) Police officers responded to the scene, where witnesses said a white Chevrolet Tahoe with white wheel rims had been involved. (Hr'g Tr. at 19.)

About four hours later, officers traveling in a marked squad car encountered a white Chevrolet Tahoe with white wheel rims and attempted to stop it by turning on the emergency lights. (Hr'g Tr. at 20, 36.) The Tahoe did not pull over but led the officers on a high-speed pursuit. (Hr'g Tr. at 20.) The officers radioed for assistance, and one of the officers who responded was Minneapolis Police Officer Jason Wolff. (Hr'g Tr. at 45.) Officer Wolff observed the Tahoe make evasive maneuvers, fail to stop at stop signs, and run red lights. (Hr'g Tr. at 47-48.) The Tahoe eventually pulled over at Lyndale and 26th, and the front passenger exited the vehicle and ran. (Hr'g Tr. at 48.) The individual was holding the left side of his waist, which indicated to Officer Wolff that he was carrying a gun. (Hr'g Tr. at 48.) Officer Wolff aired the description of the individual and continued his pursuit of the Tahoe. (Hr'g Tr. at 48.)

The Tahoe soon pulled over at Lyndale and 24th, and officers conducted a felony traffic stop. (Hr'g Tr. at 49.) Officer Wolff testified that a felony traffic stop was conducted because the Tahoe had fled pursuing officers; the Tahoe was a suspect vehicle

3

in a shots-fired call a few hours earlier; and officers suspected there might be guns inside the vehicle. (Hr'g Tr. at 49.) Once the Tahoe was stopped, officers ordered the driver, Woods, to exit the car. (Hr'g Tr. at 49.) He was taken into custody, and the other occupants were also ordered to exit. (Hr'g Tr. at 36, 49.)

After all of the occupants had exited the Tahoe, Officer Wolff and his partner approached the Tahoe and opened the front passenger door. (Hr'g Tr. at 49-51.) Their purpose in doing so was to look for evidence of a crime, prepare the Tahoe for towing, and secure the Tahoe for inventory purposes.[1] (Hr'g Tr. at 50.) The Tahoe had to be towed because it was parked illegally, and there was no one at the scene who could have taken possession. (Hr'g Tr. at 50-51.) When Officer Wolff opened the door, he saw a handgun on the floorboard in plain view. (Hr'g Tr. at 20, 36, 37, 51.) His partner saw a second handgun behind the front passenger seat. (Hr'g Tr. at 51.) The Tahoe was subsequently removed by a towing service. (Hr'g Tr. at 32.)

The Court finds here that the Tahoe was properly searched pursuant to the automobile exception to the warrant requirement. "Under the automobile exception to the Fourth Amendment's warrant requirement, a police officer who has lawfully made a roadside stop of a vehicle may search the passenger compartment and trunk of that vehicle if probable cause exists to believe that contraband or evidence of criminal activity is located inside the vehicle." *United States v. Walker*, 840 F.3d 477, 483 (8th Cir. 2016). "Probable cause for a search under the automobile exception exists if the facts and

---

[1] Lieutenant Biederman later obtained a search warrant for the Tahoe to search for additional contraband. (Gov't Ex. 6.)

4

circumstances known to the officers when they began the search were sufficient in themselves for a person of reasonable caution to believe that contraband or evidence of criminal activity was present in the vehicle." *Id.*

In *United States v. Lindsey*, an officer received information that a person in a vehicle matching the defendant's vehicle had fired a gun. No. 14-cr-186 (PAM/JJG), 2014 WL 4293977, at *1 (D. Minn. Aug. 28, 2014). When the officer stopped the defendant's vehicle, the defendant refused to show his hands or exit the car. *Id.* This gave the officers probable cause to believe that the defendant was involved in the shooting and that evidence of that crime would be found in the vehicle. *Id.*

In the case at hand, officers pursued the Tahoe because it matched the description of a vehicle associated with a report of gunshots a few hours earlier. Woods flouted officers' attempts to pull him over and fled at a high rate of speed, failing to stop at stop signs and red lights. Pursuing officers also saw the front-seat passenger exit the Tahoe and run away while holding the left side of his waist, which indicated to the officers that he was carrying a gun. In light of all the facts and circumstances known to the officers who searched the Tahoe, there was probable cause to believe that the Tahoe contained evidence related to the reported shooting.

Because the Court concludes the Tahoe was properly searched without a warrant under the automobile exception, the Court does not address the applicability of the search-incident-to-arrest exception. "Warrantless searches need only be justified by one exception to the Fourth Amendment warrant requirement . . . ." *United States v. Webster*, 625 F.3d 439, 445 (8th Cir. 2010).

### B.     Evidence Seized from Woods' Home and Cell Phones Pursuant to a Warrant

The search warrant and supporting affidavit for Woods' residence were submitted at the hearing as Government Exhibit 7, and the search warrant and supporting affidavit for Woods' cell phones were submitted as Government Exhibit 5.  Woods argues that the search warrants were not supported by probable cause.  The Court disagrees.

A search warrant must be supported by probable cause, supported by a sworn affidavit, and must describe with particularity the place to be searched and the items or persons to be seized.  U.S. Const. amend IV.  The task of a judge presented with a search warrant is "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  As the very term implies, probable cause "deal[s] with probabilities.  These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."  *Id.* at 231 (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).

A court reviewing a previous determination of probable cause must give "great deference" to the issuing judge's assessment.  *Id.* at 236 (quotation omitted).  If the issuing judge "relied solely on the supporting affidavit to issue the warrant, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'"  *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999) (quotation omitted).

6

Lieutenant Biederman provided the affidavit in support of the search warrant application for Woods' phones. (Gov't Ex. 5.) He averred numerous facts and circumstances in his affidavit, the most salient of which are:

- On May 18, 2018, Minneapolis police officers responded to a reported discharge of a weapon at 723 Morgan Avenue North. Occupants at that address said they suspected a man named Dempsey Brown, with whom they had just argued, and who said he was going to get his gun. Minutes later, gunshots were fired, and the occupants saw an older white Tahoe with white wheel rims leave the area. They had seen Brown in that vehicle before. Officers retrieved discharged cartridge casings from the area.
- About four hours later, officers saw the Tahoe and attempted to pull it over. The Tahoe led the officers on a high-speed pursuit, and when the Tahoe finally stopped, Woods was ascertained to be the driver. Two handguns were recovered from the Tahoe.
- Woods told Lieutenant Biederman that he had two cell phones and gave him the numbers.
- On May 19, 2018, Woods made a recorded call from the Hennepin County Jail to Jardell Woods ("Jardell"). Jardell told Woods in coded language that he wanted to obtain a gun because he feared for his safety. Woods gave Jardell the names of "Money Mike" and "Snake" as people who could assist him, and said their phone numbers were stored in Woods' cell phone, which was at his house.
- On May 22, 2018, Samuel Brantley told Minneapolis police that Woods said he had shot and killed a man named Keith Brewer the day before.
- A search warrant was executed at Woods' home on May 22, 2018, and firearms magazines and bullets were recovered.
- One phone was seized from Woods' person when he was arrested on May 24, 2018, and two phones were seized from the Tahoe when it was searched pursuant to a warrant on May 24, 2018.
- A confidential reliable informant ("CRI") had recently told Lieutenant Biederman that Woods sells heroin and uses his cell phones to do so. The CRI has provided truthful information in the past.
- In Lieutenant Biederman's training and experience, cell phones are used to store texts, photographs, messages, phone numbers, other contact information, maps and GPS locations, and call histories; and people who possess firearms and narcotics often retain photographic documentation on their cell phones.

7

The Court concludes that the information conveyed in Lieutenant Biederman's affidavit established probable cause to believe that contraband or evidence of a crime would be found on Woods' cell phones.  Consequently, evidence seized pursuant to the warrant should not be suppressed.

Officer Jeffrey Kirchoff provided the affidavit in support of the search warrant application for Woods' residence.  (Gov't Ex. 7).  The most relevant facts averred in his affidavit are that:

- Within the previous seventy-two hours, a CRI saw multiple firearms and a large quantity of heroin inside Woods' residence at 3xxx Newton Avenue North in Minneapolis.  The CRI said that "Woody" lived there and sells heroin and cocaine, and that "Woody" has multiple firearms.  The CRI's physical description of "Woody" matched Woods' appearance, and the CRI confirmed that "Woody" was Woods by looking at booking photographs of Woods
- Officer Kirchoff learned from a law enforcement database that Woods reported 3xxx Newton Avenue North in Minneapolis as his residence.  Officer Kirchoff also learned that Woods has multiple arrests for narcotics and convictions for drug sales, drug possession, and felony pistol possession.
- Surveilling officers saw Woods at the 3xxx Newton Avenue North address within the seventy-two hours before the warrant was obtained.

The Court finds that the information conveyed in Officer Kirchoff's affidavit established probable cause to believe that contraband or evidence of a crime would be found at Woods' residence. Consequently, evidence seized pursuant to the warrant should not be suppressed.

### III. Woods' Motion to Suppress Statements

In Woods' originally-filed motion to suppress statements, Woods referenced statements he made on or about May 18, May 19, June 29, and June 30, 2018.  In the

Government's written response to the motion, the attorney for the Government represented that he was not aware of any statements made by Woods on May 18, and that Woods' statement on May 19 was made after Woods was fully advised of his *Miranda* rights.  The Government also clarified that Woods did not make a statement on June 29 or 30, but that he had been interviewed at the Sherburne County Jail on May 29, 2018.  The attorney for the Government represented that he did not intend to use the May 29 statement at trial, however, and recommended that the motion be denied as moot as to that statement.  At the hearing, Woods confirmed the only statement remaining at issue was the statement made on May 19.  In Woods' post-hearing brief, he argued that the setting of the interrogation did not allow him to resist or disengage from the interrogation, such that his waiver of *Miranda* rights was not valid.

The facts relevant to Woods' motion to suppress statements are as follows. Lieutenant Biederman interviewed Woods on May 19, 2018, in an interview room located in the basement of the Hennepin County Jail.  (Hr'g Tr. at 21.)  The room is a small concrete room with heavy doors that lead only into the jail.  (Hr'g Tr. at 22.)  A deputy escorted Woods to the room.  (Hr'g Tr. at 23.)  Woods was handcuffed during the walk, and the handcuffs were removed before the interview.  (Hr'g Tr. at 23.)  Lieutenant Biederman was wearing a police uniform but did not have a gun.  (Hr'g Tr. at 39.) Lieutenant Biederman began audio-recording immediately and recorded the entire interview.  (Hr'g Tr. at 23; Gov't Ex. 8.)  Woods sat at a table in the interview room, directly across from Lieutenant Biederman.  (Hr'g Tr. at 25.)  Lieutenant Biederman began the interview by advising Woods of his *Miranda* rights, and Woods indicated he

9

had heard them before.  (Hr'g Tr. at 26.)  Woods appeared to understand Lieutenant Biederman's questions, and his demeanor and responses were appropriate.  (Hr'g Tr. at 26.)  The interview ended when Lieutenant Biederman asked Woods for the pass codes to his cell phones, and Woods declined.  (Hr'g Tr. at 27.)

The only specific challenge Woods offers to the admissibility of his statement is that the setting of the interrogation did "not lend itself to a sense of being able to move, resist, or disengage from the interrogation."  (Woods' Mem. Supp. Mots. Suppress at 4 [Doc. No. 41].)  Thus, he submits, he could not have intelligently and freely waived his *Miranda* rights.

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  Prior to initiating a custodial interrogation, law enforcement officials must inform the person being questioned of his rights under the Fifth Amendment as a "procedural safeguard" in order to "secure the privilege against self-incrimination."  *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  That procedural safeguard is met when "[p]rior to any questioning, the person [is] warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney."  *Id.*  An individual may relinquish his *Miranda* rights through a voluntary, knowing, and intelligent waiver.  *Miranda*, 384 U.S. at 444.

Woods does not challenge the adequacy of the *Miranda* advisory.  Rather, he seems to suggest that the location of the interview rendered his waiver involuntary.  But there is no evidence that the interview room differed from any other interview room in a

jail setting. The mere fact that a defendant is interrogated in an interview room in a jail does not render a *Miranda* waiver involuntary. Nor is there any evidence that Woods was actually prevented from moving around the interview room or from ending the interrogation, that he felt he could not do so, or that Lieutenant Biederman used deceptive or coercive tactics. Consequently, Woods' statements were voluntary and should not be suppressed.

### IV.   Acon's Motion to Suppress Evidence

In Acon's originally-filed motion to suppress evidence, he asked to suppress evidence obtained from a cell phone seized pursuant to a search warrant. The phone was seized from Acon after he was apprehended, but was not searched until officers obtained a warrant. (*See* Hr'g Tr. at 42.)  In the Government's written response, the Government asked the Court to conduct a four-corners review of the search warrant for probable cause. At the hearing, Acon confirmed his intent to ask for a four-corners review of the warrant, and his post-hearing memorandum addressed the sufficiency of probable cause and the breadth of the warrant. Acon also argues that the officers who executed the warrant did not act in good faith reliance on it.

Acon's phone was seized pursuant to the search warrant included in Government Exhibit 5, which was supported by Lieutenant Biederman's affidavit. In addition to the facts and circumstances recounted in Part II.B above, Lieutenant Biederman provided the following information that is of particular relevance to Acon:

- Acon was a passenger in the Tahoe while it was being pursued by police on May 18, 2018, after the shots-fired call. He fled the Tahoe on foot and was apprehended a short distance away. A cell phone was seized from his person and

stored in a police property room while a warrant was obtained.

- Two handguns were received from the Tahoe, one of which was stolen. Acon's possession of the firearms would constitute a crime.

- Pursuant to the search warrant executed on the Tahoe, a scale used to measure drugs and a small amount of marijuana were discovered and seized from the Tahoe.

- In Lieutenant Biederman's training and experience, cell phones are used to store texts, photographs, messages, phone numbers, other contact information, maps and GPS locations, and call histories. This information may contain documentation of narcotics dealing such as sources, customers, and locations of narcotics.

- In Lieutenant Biederman's training and experience, people who possess firearms and narcotics often retain photographic documentation on their cell phones.

The Court concludes that the information conveyed in Lieutenant Biederman's affidavit established probable cause to believe that contraband or evidence of a crime would be found on Acon's cell phone. To set the stage, Acon was riding in a vehicle that had been associated with gunshots being fired a few hours before. Woods, the driver of the Tahoe, did not pull over when directed by police, but led them on a high-speed pursuit instead. Acon's flight from the Tahoe during the pursuit was "the consummate act of evasion"— "not necessarily indicative of wrongdoing, but . . . certainly suggestive of such." *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

With respect to probable cause based on the firearms, Acon was a passenger in the Tahoe at the same time that the firearms were located inside the Tahoe. It would have been a crime for Acon to possess the stolen firearm. In Lieutenant Biederman's training and experience, individuals who possess firearms often store photographic documentation of their firearms on their cell phones. Similar nexuses exist for the marijuana and drug scale. Acon was a passenger in the Tahoe at the same time the drug scale and marijuana

were inside the vehicle.  In Lieutenant Biederman's training and experience, individuals who possess narcotics often have photographic documentation on their cell phones.  In addition, individuals engaged in narcotics dealing use cell phones to store texts, messages, phone numbers, GPS locations, maps, and call histories related to supply sources, customers, and locations of narcotics.

Acon's presence in the Tahoe at the same time as the firearms, marijuana, and drug scale established the requisite connection between him and the suspected criminal activity, which included unlawful firearms possession and narcotics dealing.  Acon was also apprehended after fleeing the Tahoe during a high-speed pursuit by police, which was at least indicative of wrongdoing.  The facts set forth in the affidavit also established the requisite nexus between Acon's cell phone and the suspected criminal activity, given Lieutenant Biederman's description of information likely to be stored on cell phones and how that information could constitute evidence of firearms possession or drug dealing.  Consequently, the affidavit established the requisite nexus.

Acon also argues that the warrant was overbroad because it authorized an unlimited forensic examination of the phone's contents.  Acon relies on *United States v. Winn*, 79 F. Supp. 3d 904 (S.D. Ill. 2015), but this reliance is misplaced.  The warrant in *Winn* authorized the seizure of "any or all files" contained on a cell phone.  *Id.* at 919.  This was overbroad because the supporting affidavit did not provide probable cause to believe that everything on the phone was evidence of the crime under investigation, which was public indecency.  *Id.*  Rather, the supporting affidavit provided probable cause to believe only that photographs and videos would contain evidence of public

13

indecency.

Here, on the other hand, the warrant did not authorize the search of "any or all files," but a search of data contained in the cell phones, including but not limited to "photographs, videos, call logs, address books, text messages, messages, notes, saved web addresse[s], GPS data, saved or visited locations, audio recordings, identifying numbers and other electronic data." (Gov't Ex. 5.) These categories of information are similar to the ones described in Lieutenant Biederman's affidavit as likely to contain evidence of firearms possession or drug dealing. Concerning the phrase "including but not limited to," any ambiguity caused by this phrase was cured the warrant's subsequent list of examples of the types of data that could be seized. *See United States v. Riley*, 906 F.2d 841, 844 (2d Cir. 1990).

Even if probable cause were lacking or the warrant were overbroad, the Court finds that the good-faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897, 922 (1984), applies. There has been no showing that the judge who issued the warrant "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," or that that the issuing judge "wholly abandoned his judicial role." *See id.* at 923. Nor was the affidavit so lacking in probable cause that reliance on it was objectively unreasonable, or the warrant itself so facially deficient that its validity could not be presumed. *See id.* Though Acon argues that Lieutenant Biederman merely "lumped" his phone in with the other four phones discussed in the affidavit, this argument overlooks the specific connections between Acon and the suspected criminal activity that were described in the

14

affidavit, as well as the frequent use of cellular phones associated with firearms possession and narcotics dealing as Lieutenant Biederman learned through training and experience. These connections distinguish this case from Acon's authority, *United States v. Herron*, 215 F.3d 812 (8th Cir. 2000), where there were no allegations linking the defendant to criminal activity other than a prior conviction and a familial relationship. *Id.* at 814.

In sum, even if probable cause were lacking, the Court finds that exclusion of the evidence is not appropriate because the officers who executed the warrant relied on it in good faith.

**V.    Acon's Motion to Suppress Statements**

In Acon's originally-filed motion to suppress statements, he sought to suppress any statements he may have made on May 18, 2018, if the evidence showed that he responded to questioning without a *Miranda* advisory. The Government represented in its written response that it was not aware of any statements made by Acon on May 18, and suggested that the Court deny the motion as moot. Acon confirmed at the hearing that the motion was moot, and the Court accordingly recommends that it be denied as moot.

Accordingly, based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Richard Alonzo Woods' Motion for Suppression of an Unlawful Search [Doc. No. 28] be **DENIED**;

2. Defendant Richard Alonzo Woods' Motion for Suppression of Statements [Doc. No. 31] be **DENIED**;

3. Defendant Damen Tyrell Lee Acon's Pretrial Motion to Suppress Search and Seizure [Doc. No. 37] be **DENIED**; and

4. Defendant Damen Tyrell Lee Acon's Pretrial Motion to Suppress Statements, Admissions, and Answers [Doc. No. 38] be **DENIED as moot**.


Dated: November 16, 2018

*s/ Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under D. Minn. LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.