UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Richard Alonzo Woods (1) and Damen Tyrell Lee Acon (2),<br><br>Defendants. | Case No. 18-cr-0153 (WMW/HB)<br><br>**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** |

This matter is before the Court on the November 16, 2018 Report and Recommendation (R&R) of United States Magistrate Judge Hildy Bowbeer. (Dkt. 55.) The R&R recommends denying the motions of Defendants Richard Alonzo Woods and Damen Tyrell Lee Acon to suppress evidence seized by, and statements made to, law enforcement officers. Defendants filed timely objections to the R&R, and Plaintiff United States of America responded. For the reasons addressed below, Defendants' objections are overruled, the R&R is adopted, and Defendants' motions to suppress are denied.

## BACKGROUND[1]

An individual called 911 to report gunshots fired in a Minneapolis neighborhood at approximately 4:00 p.m. on May 18, 2018. Minneapolis police officers responded to the scene, and a witness reported that a white Chevrolet Tahoe with white wheel rims had been involved.

---

[1] The relevant factual and procedural background is addressed in detail in the R&R and need not be repeated at length.

Approximately four hours later, Minneapolis police officers in a marked squad car encountered a white Chevrolet Tahoe with white wheel rims that was traveling approximately 2 or 3 miles north of the location where the gunshots were heard. The officers attempted to perform a traffic stop. The Tahoe did not pull over. Instead, the driver of the Tahoe led the officers on a high-speed pursuit for several minutes and engaged in evasive maneuvers, such as failing to obey stop signs and red lights. During this pursuit, the officers observed the Tahoe stop briefly while the front passenger, who was later identified as Acon, exited the vehicle and fled on foot. The officers pursued the Tahoe approximately two blocks further, where they stopped the Tahoe and ordered the driver, who was later identified as Woods, to exit the vehicle. Police took Woods into custody and ordered the other occupants to exit the vehicle. The officers subsequently apprehended Acon a short distance from the traffic-stop location and seized his cell phone.

After the Tahoe's occupants had exited the vehicle, one officer opened the front passenger door and saw in plain view a handgun on the floor. Another officer saw a second handgun behind the front passenger seat. One of these firearms was stolen. The Tahoe subsequently was removed by a towing service. Police later obtained a search warrant for the Tahoe and recovered from the vehicle two cell phones, marijuana, and a scale. Police also obtained a search warrant for the cell phones seized from Woods and Acon and a search warrant for Woods's residence.

A grand jury returned an indictment charging both Woods and Acon with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1). Woods now moves to suppress evidence obtained from the warrantless search

of the Tahoe, evidence obtained from the searches of his cell phones and residence, and statements that he made to police on May 19, 2018. Acon moves to suppress evidence obtained from the search of his cell phone and statements that he made to police. The magistrate judge held an evidentiary hearing on August 28, 2018, and subsequently issued the pending R&R, which recommends denying Defendants' motions. Defendants filed timely objections and the United States responded.

## ANALYSIS

Woods objects to the R&R's probable cause determinations for the searches of the Tahoe, his cell phones, and his residence, as well as the R&R's determination that his statements to police on May 19, 2018, were made after a voluntary waiver of his *Miranda* rights. Acon objects to the R&R's probable cause determination with respect to the search of his cell phone. This Court reviews each determination de novo. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); LR 72.2(b)(3); *accord Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam).

### I.  Woods's Motion to Suppress Evidence

Woods moves to suppress evidence obtained from the warrantless search of the Tahoe and the subsequent searches of his cell phones and his residence pursuant to two search warrants. The R&R concludes that police had probable cause to search the Tahoe under the automobile exception to the warrant requirement and that the warrants to search Woods's cell phones and residence were supported by probable cause as demonstrated by the affidavits submitted with the warrant applications. The R&R also determines that the

3

cell phone search warrant is not overbroad. Woods objects to each determination, and the Court addresses each objection in turn.

### A. Warrantless Search of the Tahoe

Woods first objects to the R&R's determination that police had probable cause to search the Tahoe under the automobile exception to the warrant requirement. The Fourth Amendment to the United States Constitution guarantees the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. Warrantless searches and seizures are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586 (1980). The United States must demonstrate the need for an exception from the warrant requirement and that the search was conducted within the bounds of the exception. *United States v. Kennedy*, 427 F.3d 1136, 1144 (8th Cir. 2005). Under the automobile exception to the warrant requirement, a police officer who has made a lawful roadside stop of a vehicle may search the passenger compartment and trunk of the vehicle if the officer has the requisite probable cause to support the search. *United States v. Walker*, 840 F.3d 477, 483 (8th Cir. 2016). "Probable cause for a search under the automobile exception exists if the facts and circumstances known to the officers when they began the search were sufficient in themselves for a person of reasonable caution to believe that contraband or evidence of criminal activity was present in the vehicle." *Id.*

Woods argues that police lacked probable cause to search the Tahoe for several reasons. First, according to Woods, police had learned from a witness that a man named Dempsey Brown—not Woods—was involved in the shooting earlier that day. Second, approximately four hours elapsed between the reported gunshots and the traffic stop of the

4

Tahoe. Third, police could not have believed that they would find evidence in the Tahoe because an officer testified that he believed that Acon took a firearm with him when he fled the vehicle.

Woods's arguments fail to account for the evidence connecting the Tahoe—and potentially its occupants—to the reported shooting that occurred earlier that day. Even if the officers suspected that someone other than Woods was involved in the shooting, they nonetheless had evidence connecting a white Chevrolet Tahoe with white wheel rims to the shooting. As one officer testified, "[a] white Tahoe with large white rims is hard to miss. There's not a lot of vehicles in North Minneapolis like that." Police observed Woods's Tahoe, which matched that description, in the general vicinity of the shooting within hours after the shooting. The fact that police believed Acon fled the Tahoe with evidence in his possession or that several hours passed between the shooting and the traffic stop does not eliminate the officers' probable cause. Despite these intervening events, the officers had probable cause to believe that the Tahoe contained contraband or evidence of criminal activity, including additional firearms, ammunition, cell phones or other electronic devices, or forms of identification. That Woods led police on a high-speed chase for approximately ten blocks lends additional support for officers' probable cause to believe that the Tahoe contained contraband or evidence of criminal activity.

For these reasons, Woods's objections to the R&R are overruled with respect to the warrantless search of the Tahoe, and that aspect of the R&R is adopted.

**B. Searches of Woods's Cell Phones and Residence**

5

Woods also objects to the R&R's determination that the warrants to search his cell phones and residence were supported by probable cause. The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV.; *see also United States v. Fiorito*, 640 F.3d 338, 345-46 (8th Cir. 2011) (recognizing that a search warrant may issue on a showing of probable cause). Whether probable cause exists is a "common-sense decision" that weighs the totality of the circumstances that are detailed in a warrant application. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A court reviewing a probable-cause determination must give "great deference" to the issuing court's probable-cause assessment. *Id.* at 236 (internal quotation marks omitted). If the court's decision to issue a warrant relied solely on the supporting affidavit, then "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999) (internal quotation marks omitted). Probable cause requires a nexus between the evidence sought and the location to be searched. *United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007).

1. **Woods's Cell Phones**

Woods first objects to the R&R's assessment of the affidavit submitted in support of the search warrant for his cell phones, arguing that the facts in the affidavit do not support probable cause to search the phones. The Court evaluates Woods's objection by examining the facts contained within the four corners of the search warrant affidavit. *See Etheridge*, 165 F.3d at 656.

According to the affidavit, one cell phone was seized from Woods when he was arrested on May 24, 2018, and two cell phones were seized from Woods's Tahoe, which also contained a scale, marijuana, and two firearms—one of which was stolen. These phones had a nexus to the Tahoe, Woods, or both and, by extension, are connected to the alleged shooting on May 18, 2018, the high-speed police chase that followed, and the contraband recovered from the Tahoe. In addition, a Confidential Reliable Informant (CRI) told police that Woods possesses a firearm (which Woods is ineligible to possess) and that Woods uses his cell phones to sell heroin. Also, in a recorded phone call that Woods made from jail on May 19, 2018, he used code words to discuss firearms and referred to individuals whose contact information he said was stored in his cell phone. Several days later, after police located an individual who Woods referred to in the recorded phone call, that individual told police that Woods had been involved in a recent murder.

Woods challenges the credibility and significance of certain facts in the affidavit, including those facts summarized above. But a court "may draw reasonable inferences from the *totality* of the circumstances in determining whether probable cause exists to issue a warrant." *Summage*, 481 F.3d at 1078 (emphasis added) (internal quotation marks omitted). Woods challenges certain individual facts, but the record belies his arguments when it is evaluated as a whole. The affidavit establishes probable cause to search Woods's cell phones for evidence of criminal activity when the affidavit is viewed in context with the totality of the circumstances it details and in light of the substantial deference owed to the issuing court's probable-cause determination. Woods's arguments to the contrary are unavailing.

Woods also challenges the breadth of the warrant. He argues that "a search warrant should not simply be a fishing expedition carried out in hope of getting a hit." To satisfy the Fourth Amendment's particularity requirement, a warrant "must be sufficiently definite to enable the searching officers to identify the property authorized to be seized." *Id.* at 1079 (internal quotation marks omitted). The degree of specificity required depends on the circumstances of the case and the types of items involved. *Id.* Here, the affidavit describes investigations into numerous serious crimes, including drug dealing, unlawful possession of firearms, firearm trafficking, shootings, and murder. And the affidavit identifies specific information sought in connection with those investigations, such as documentation of narcotics dealing, location data, the source and location of firearms, and communications that could corroborate evidence relating to a contemporaneous murder. As such, the warrant authorizes officers to search for data contained in the cell phones "[i]ncluding, but not limited to, photographs, videos, call logs, address books, text messages, messages, notes, saved web addresse[s], GPS data, saved or visited locations, audio recordings, identifying numbers and other electronic data." In light of the circumstances presented and the types of items searched and information sought, the cell phone search warrant is not overbroad.

For these reasons, Woods's objections to the R&R are overruled with respect to the search of his cell phones. The Court adopts that aspect of the R&R.

2. **Woods's Residence**

Woods next objects to the R&R's assessment of the affidavit submitted in support of the search warrant for his residence because, he argues, the facts in the affidavit do not

support probable cause to search his residence. The Court evaluates Woods's objection by examining the facts contained within the four corners of the search warrant affidavit. *See Etheridge*, 165 F.3d at 656.

The affidavit relies primarily on information police received from a CRI. Within 72 hours before the search warrant issued, the CRI "observed multiple firearms and a large quantity of heroin being stored inside" Woods's residence. The CRI told police, among other things, that Woods lives at the residence, sells heroin and cocaine, and possesses multiple firearms. The affidavit also states that Woods has multiple prior felony convictions or arrests involving drugs and firearms.

Woods primarily challenges the reliability of the CRI. According to Woods, because police did not find multiple firearms or a large quantity of heroin inside Woods's residence, the CRI is unreliable. This hindsight reasoning is flawed, given that the probable-cause determination must be evaluated based on the facts contained in the affidavit. *See id.* (stating that "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause" (internal quotation marks omitted)). Clearly, the results of a search conducted *after* the warrant is issued are not relevant to whether the search warrant affidavit established probable cause in the first instance. The affidavit, on the other hand, details the basis for the CRI's reliability, including past information provided by the CRI that was independently corroborated by the affiant and other law enforcement officers. Woods has not demonstrated that the search warrant affidavit's reliance on the CRI is unfounded or that the affidavit is otherwise deficient.

Accordingly, Woods's objections to the R&R are overruled with respect to the search of his residence, and that aspect of the R&R is adopted.

## II. Woods's Motion to Suppress Statements

Woods next objects to the R&R's determination that his statements to police on May 19, 2018, were made after a voluntary waiver of his *Miranda* rights. The Fifth Amendment to the United States Constitution provides, in relevant part, that "[n]o person shall . . . be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The prosecution cannot use statements "stemming from custodial interrogation of the defendant unless [the prosecution] demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). An individual may waive his or her *Miranda* rights through a voluntary, knowing, and intelligent waiver. *Id.*

Woods does not challenge the findings of fact that address the circumstances in which his statements to the police were made. Instead, Woods objects to the R&R's conclusion that these conditions did not make his statements involuntary. Woods argues that the United States has not established that he was capable of intelligently and freely waiving his rights to remain silent and request an attorney because he was handcuffed, the questioning was conducted in the basement of the jail by an officer in uniform, and Woods's freedom of movement was restricted.

It is undisputed that, prior to questioning Woods on May 19, 2018, the officer administered a *Miranda* warning. Woods told the officer that he had heard the *Miranda* warning before, and the officer testified that it appeared to him that Woods understood the

10

officer's questions. Woods was in a jail setting, and his freedom of movement was somewhat restricted. But nothing in the record indicates that he was coerced, intimidated, or deceived while he was in custody. The record reflects that he was advised of his rights, understood those rights, and exercised those rights, at least in part, by refusing the officer's request for certain information. The totality of the circumstances in this case, as gleaned from the record, indicates that Woods made a voluntary, knowing, and intelligent waiver of his *Miranda* rights.

Accordingly, Woods's objection is overruled, and the Court adopts this aspect of the R&R.

### III. Acon's Motion to Suppress Evidence

Acon objects to the R&R's determination that the warrant to search his cell phone was supported by probable cause. Acon also objects to the R&R's determination that the cell phone search warrant was not overbroad. The Court evaluates Acon's objections by considering the facts contained in the search warrant affidavit. *See Etheridge*, 165 F.3d at 656.

Acon challenges the existence of probable cause, arguing that the affidavit lacks sufficient information about him and the majority of criminal activity described in the affidavit pertains to others. Acon's argument is misguided. The legal standard is not whether there is a nexus between the evidence sought and the *defendant*. Rather, the question is whether there is a nexus between the evidence sought and the *location to be searched*. *Summage*, 481 F.3d at 1078. Because Acon's cell phone was in the Tahoe with him on May 18, 2018, it follows that the phone is connected to the alleged shooting on that

11

date, the high-speed police chase that followed, the officers' pursuit on foot after Acon fled the Tahoe, and the contraband subsequently recovered from the Tahoe. Notably, one of the firearms recovered from the Tahoe was located near the front passenger seat where Acon had been sitting before he fled the vehicle. Given the totality of these circumstances, the court that issued the search warrant reasonably inferred that Acon's cell phone could contain information related not only to the shooting, but also to stolen and illegally possessed firearms and drug dealing. These facts establish a nexus between Acon and possible criminal activity. Moreover, the facts in the affidavit establish a connection between evidence of criminal activity and Acon's cell phone, regardless of whether the criminal activity directly involved Acon or instead involved other occupants of the Tahoe. For these reasons, the probable-cause determination with respect to Acon's cell phone is sound.

Acon, like Woods, also challenges the breadth of the search warrant, arguing that it "permits a general exploratory search—all data contained in the cell phones—to rummage through Mr. Acon's phone without limitation and without specifying or limiting the search to evidence of a crime." But the degree of specificity required depends on the circumstances of the case and the types of items involved. *Id.* at 1079. As the Court observes above in Part I.B., the affidavit describes investigations into numerous serious crimes, including drug dealing, unlawful possession of firearms, firearm trafficking, shootings, and murder. And the affidavit identifies specific information related to those investigations that the police seek, such as documentation of narcotics dealing, location data, and the source and location of firearms. The affidavit establishes a nexus between

evidence of criminal activity and Acon's cell phone, even if Acon was not directly involved in all the criminal activity described in the affidavit. The court that issued the warrant reasonably inferred from the facts in the affidavit that Acon was an associate of Woods and could have communicated with Woods about criminal activities that might not have directly involved Acon, such as the May 18 shooting and the possession and trafficking of firearms and drugs. In light of the circumstances of this case and the types of items and information involved, Acon's contention that the cell phone search warrant is overbroad lacks merit.

For these reasons, Acon's objections to the R&R are overruled with respect to the search of his cell phone, and that aspect of the R&R is adopted.

## IV. Acon's Motion to Suppress Statements

Based on representations made at the evidentiary hearing by both Acon and the United States, the R&R recommends denying as moot Acon's motion to suppress statements. Acon does not object to this aspect of the R&R. When reviewing dispositive recommendations to which no objection has been made, this Court determines whether the recommendation is clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(a); *accord Grinder*, 73 F.3d at 795. Having reviewed those portions of the R&R to which no objections have been made, the Court concludes that the R&R is neither clearly erroneous nor contrary to law.

## ORDER

Based on the R&R, the foregoing analysis, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant Richard Alonzo Woods's objections to the November 16, 2018 R&R, (Dkt. 63), are **OVERRULED**.

2. Defendant Damen Tyrell Lee Acon's objections to the November 16, 2018 R&R, (Dkt. 62), are **OVERRULED**.

3. The November 16, 2018 R&R, (Dkt. 55), is **ADOPTED**.

4. Defendant Richard Alonzo Woods's motion to suppress seized evidence, (Dkt. 28), is **DENIED**.

5. Defendant Richard Alonzo Woods's motion to suppress statements, (Dkt. 31), is **DENIED**.

6. Defendant Damen Tyrell Lee Acon's motion to suppress seized evidence, (Dkt. 37), is **DENIED**.

7. Defendant Damen Tyrell Lee Acon's motion to suppress statements, (Dkt. 38), is **DENIED AS MOOT**.

Dated: January 28, 2019

s/Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge